[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The Statewide Grievance Committee has filed a presentment against the respondent, Attorney Richard Gifford, seeking his suspension from the practice of law for one year. For the following reasons, the court grants the relief sought by the Grievance Committee.
BACKGROUND
Based on evidentiary hearings conducted on April 18 and November 16, 2001, the court finds the following facts by clear and convincing evidence. In 1991, the complainant, Ann Weichman, filed a pro se claim with the Commission on Human Rights and Opportunities ("CHRO") alleging that her termination from employment with The Travelers Company was based on age discrimination. The CHRO thereafter found no reasonable cause and dismissed the claim.[1]
In May, 1993, Weichman retained the respondent to file a federal age discrimination suit on her behalf against Travelers. Although the respondent took the matter on a contingency fee basis, the respondent never provided Weichman with a written fee agreement.
The respondent filed suit against Travelers in federal court in Connecticut in June, 1993. In December, 1993, lawyers for Travelers took Weichman's deposition. The respondent viewed Weichman's testimony at the deposition, in which she alleged that her coworkers had made derogatory CT Page 1142 statements about older workers, as incredible based on his belief that she had not made similar allegations in her CHRO papers. For this reason, the respondent did no further work on the case. When the district court entered a pretrial order in February, 1994 requiring the parties to file a trial memorandum, the respondent did not do so. In May, 1994, Travelers moved to dismiss the case based on the respondent's failure to comply with the pretrial order. The respondent did not oppose the motion. On June 15, 1994, the district court granted the motion and dismissed the case.
The respondent did not inform Weichman of these developments and did not respond to her phone calls and letters inquiring about the status of the case. After waiting for a total of five years to hear from the respondent, Weichman filed a complaint with the Grievance Committee. In April, 1999, the Grievance Committee forwarded Weichman's complaint to the respondent and advised him that, within thirty days, he should file his explanation of the matter with the Grievance Panel for the Hartford-New Britain Judicial District and that the Grievance Panel would be investigating the matter. The respondent failed to file any response.
The respondent has been practicing law since 1985. In 1999 and 2000, the Grievance Committee reprimanded the respondent for failure to communicate with his client in one case and, in another, for failure to act with reasonable diligence, failure to safeguard property, and failure to answer a grievance complaint. In 1999, a judge of the superior court reprimanded the respondent for failing to respond to a lawful demand for information from a disciplinary authority.
DISCUSSION
 I
The presentment alleges essentially three charges against the respondent: failure to provide Weichman with a written fee agreement, failure to communicate with Weichman and diligently represent her, and failure to answer the grievance complaint. The court finds that the Grievance Committee has proven all three charges by the requisite clear and convincing evidence. See Statewide Grievance Committee v. Egbarin,61 Conn. App. 445, 453, 767 A.2d 732, cert. denied, 255 Conn. 949,769 A.2d 64 (2001).
There is no factual dispute that the respondent did not provide Weichman a written contingency agreement. The respondent argues that no written agreement is necessary when, as here, no fee is collected or charged. This issue is governed by Rule 1.5(c) of the Rules of Professional Conduct, which provides as follows: CT Page 1143
 A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subsection (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
The plain language of the rule makes clear that the requirement that "[a] contingent fee shall be in writing" does not contain an exception for unsuccessful cases. Indeed, the provision at the end of the paragraph requiring an attorney to provide a written statement of the outcome of the matter and, "if there is a recovery," a financial summary reveals that the rule specifically contemplates cases in which there is no recovery. The requirement of a writing in unsuccessful contingent fee cases serves the important purpose of documenting that a client does not owe attorney fees when he has not prevailed in the case. The court accordingly rejects the respondent's argument and finds that he has violated Rule 1.5(c).
The respondent's defense of the second charge of failure to communicate and diligently represent his client is that it would have been unethical to continue to prosecute Weichman's case after the deposition revealed her inconsistent statements. The respondent relies on Rule 11 of the Federal Rules of Civil Procedure, which authorizes sanctions against attorneys and parties who, among other things, do not comply with the requirement that "the allegations and factual contentions [of a claim] have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ." Rule 11(b)(3), Fed.R.Civ.P.
The respondent's reliance on Rule 11 is misguided. In his desire to protect himself from Rule 11 sanctions, the respondent ignored his duty to his client. A lawyer has a duty to "act with reasonable diligence and promptness in representing a client," Rule of Professional Conduct 1.3, to CT Page 1144 "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information," Rule of Professional Conduct 1.4(a), and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule of Professional Conduct 1.4(b). As the commentary to Rule 1.4 states: "[u]nless the relationship is terminated as provided in Rule 1.16 [concerning withdrawal of representation], a lawyer should carry through to conclusion all matters undertaken for a client." It is obvious from these authorities as well as from common knowledge about the profession of law that a lawyer who believes that his client's case has no merit cannot unilaterally abandon the case without informing the client. Regardless of whether Weichman's case actually had evidentiary support, the respondent's failure to contact Weichman, to discuss his concerns about the case with her, and to protect her interest until he had made some agreement with her to end his representation constituted a violation of the Rules of Professional Conduct cited above.[2]
Finally, the respondent's failure to answer the grievance complaint violates Practice Book § 2-32(a)(1) and Rule 8.4(4) of the Rules of Professional Conduct.[3] The respondent attempts to excuse his noncompliance by noting that, in April 1999, when Weichman filed the grievance complaint, the Practice Book requirement to answer a grievance complaint had just come into effect the previous January. As an attorney who had been practicing for almost fifteen years, however, the respondent was expected to know or look up the law, including any recent changes. Further, the Grievance Committee's notification specifically advised the respondent to file an answer with the local grievance panel within thirty days. The respondent simply failed to heed this clear advice.
 II
The respondent's failure to devise a written contingency agreement, his failure to communicate with his client, and his failure to answer the grievance complaint in this case reveal a pattern of indolence and lack of diligence. The fact that the respondent has been previously reprimanded three times, in some cases for similar inattentiveness, establishes that the respondent's deviations from the norms of his profession are not isolated in this case. Another reprimand would likely do nothing to convince the respondent to change his ways. Further, the protection of the public is a paramount objective in attorney discipline cases, see Statewide Grievance Committee v. Dixon, supra,62 Conn. App. 515, and, given the respondent's past practice of failing to represent his clients adequately, the public needs protection from such practices in the future. A reprimand is surely less likely than a suspension to accomplish that objective. The one year suspension CT Page 1145 requested by the Grievance Committee is a moderate one, given the respondent's record. Accordingly, the court adopts the Grievance Committee's recommendation in full.
CONCLUSION
The court orders the suspension of the respondent from the practice of law for a period of one year.
____________________ Carl J. Schuman Judge, Superior Court